UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
JOSEPH MORRONE,

                               Plaintiff,

  -against-

ISLAND PARK FIRE DEPARTMENT
and MICHAEL WHALEN,

                              Defendants.
------------------------------------------------------------------X

For Online Publication Only

**MEMORANDUM & ORDER**
20-CV-204 (JMA) (SIL)

**APPEARANCES:**

H. David Krauss
99 Park Avenue, Suite 1510
New York, NY 10016
   *Attorney for Plaintiff*

Gregory Bertram Reilly
600 Third Avenue
New York, NY 10016
   *Attorney for Defendant*

**AZRACK, United States District Judge:**

## I. BACKGROUND[1]

Beginning in May 2011, plaintiff Joseph Morrone ("Plaintiff") volunteered as a junior firefighter with the Island Park Fire Department ("IPFD" or the "Department"). (ECF No. 1 at 5.) In October 2015, he applied to become a fulltime, i.e., "Class A," firefighter. (Id.) Several months later, the IPFD accepted Plaintiff's application and admitted him as a probationary, i.e., "Class B," member. (Id. at 6.) He expected to be promoted to a Class A member after completing the probationary program. (Id.)

---

[1] The Court takes the factual allegations in the complaint as true and draws all reasonable inferences in favor of Plaintiff. See Goldstein v. Pataki, 516 F.3d 50, 56 (2d Cir. 2008).

As a Class B member, Plaintiff spent approximately twenty hours per week with the Department during which he "successfully completed his trainings and performed capably in his role as Class B Firefighter, including exhibiting the requisite skill and bravery necessary for firefighting." (Id. at 2.) Nonetheless, Plaintiff was terminated from the IPFD in March 2017 despite having received "no performance warnings" nor having been "written-up for inadequate performance." (Id.) Plaintiff's termination is the subject of the instant litigation.

Before the IPFD accepted Plaintiff's application, Plaintiff's father spoke to the then-Chief of the Department regarding his son's diagnosis of Asperger's Syndrome. (Id. at 5.) Though the Chief assured Plaintiff's father that Plaintiff's disability "would not affect his application," Plaintiff claims that he was "subjected to a virtually relentless campaign of harassment and mistreatment by his fellow firefighters based on his disability." (Id. at 1, 5.) According to the complaint, Michael Whalen ("Whalen"), who was then the Second Assistant Chief of the Department and oversaw the probationary program, led his fellow firefighters in persistent public humiliation of Plaintiff because of his disability.

Plaintiff alleges that he was subject to "an ever-intensifying campaign of near-continuous hostility . . . based on his disability that was designed to force [him] out of the Department." (Id. at 6.) He claims that Whalen's campaign consisted of, among other incidents, frequently verbally harassing Plaintiff—including regularly using derogatory terminology against people with disabilities, cyberbullying Plaintiff on social media, and attempting to tie Plaintiff to a cot using plastic wrap. (Id. at 1-2.) Whalen purportedly warned Plaintiff that he "would be thrown out of the IPFD if he complained about Assistant Chief Whalen's behavior." (Id. at 7.)

On March 30, 2017, Plaintiff attended a Firefighting Primaries Class as part of the probationary program. Because the class did not accommodate his disability as he expected,

2

Plaintiff experienced an anxiety episode and stepped outside to "cool down" in the parking lot. (Id. at 13.) Due to what Plaintiff claims was a miscommunication, the instructors reported to the IPFD that Plaintiff had quit the course. (Id. at 14.) Upon his return to the firehouse later that day, Whalen began yelling and berated Plaintiff for leaving the course. Whalen expelled Plaintiff from the probationary program and ordered him to exit the firehouse with his belongings immediately. (Id. at 15.) Since then, Plaintiff claims that the IPFD "has offered contradictory, shifting rationales in a patently pretextual attempt to retroactively justify that decision." (Id.)

On January 10, 2020, Plaintiff brought the instant litigation against the IPFD and Whalen (collectively, "Defendants"). He brings four claims: (1) discrimination on the basis of disability in violation of the Americans with Disabilities Act ("ADA") against the IPFD, (2) discrimination on the basis of disability in violation of the New York State Human Rights Law ("NYSHRL") against the IPFD, (3) aiding and abetting disability discrimination in violation of the NYSHRL against Whalen, and (4) retaliation in violation of the NYSHRL against the IPFD.

## II. LEGAL STANDARD

Defendants move pursuant to Fed. R. Civ. P. 12(b)(6) to dismiss Plaintiff's three NYSHRL claims. They argue that the NYSHRL does not protect volunteer firefighters from discrimination on the basis of disability or retaliation based on complaints of disability discrimination. Defendants have not moved on Plaintiff's ADA claim.

### A. Standard of Review

To survive a motion to dismiss brought pursuant to Fed. R. Civ. P. 12(b)(6), Plaintiff must allege sufficient facts "to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). A claim is facially plausible only "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable

3

for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Twombly, 550 U.S. at 556). Mere labels and legal conclusions will not suffice. Twombly, 550 U.S. at 556. When reviewing a motion to dismiss, the Court accepts the factual allegations set forth in the complaint as true and draws all reasonable inferences in favor of the plaintiff. See Cleveland v. Caplaw Enters., 448 F.3d 518, 521 (2d Cir. 2006).

### III.  DISCUSSION

Defendants argue that Plaintiff's NYSHRL claims must be dismissed because the NYSHRL does not bar fire departments or companies from discriminating on the basis of disability. Defendants point to a subsection of the NYSHRL that provides:

> It shall be an unlawful discriminatory practice for any fire department or fire company therein, through any member or members thereof, officers, board of fire commissioners or other body or office having power of appointment of volunteer firefighters, directly or indirectly . . . to expel or discriminate against any volunteer member of a fire department or fire company therein, because of the race, creed, color, national origin, sexual orientation, military status, sex or marital status of such individual.

N.Y. Exec. Law § 296(9)(a) (McKinney). As a matter of statutory interpretation, Defendants are correct that the relevant provision of the NYSHRL does not list disability as a category protected from discrimination. See Hannigan v. North Patchogue Fire Dept., No. 12-5864, 2017 WL 2451915, at *4 (N.Y. Sup. Ct. May 26, 2017) ("Defendants have established that no right of action exists against them for discrimination based upon Executive Law § 296(9) as disability is not included in the categories protected by Executive Law § 296(9).").[2]

---

[2] In reply, Defendants trace the legislative history of the relevant statutory provisions, noting that "[w]hen the legislature enacted Section 296(9), it explicitly prohibited volunteer fire departments from discriminating against applicants and members based on certain characteristics – namely, race, color, creed and national origin." (ECF No. 18-8 at 8.) Then, "when the legislature added Section 296(9) in 1967, disability discrimination had not yet been prohibited under Section 296(1)," but "when the legislature added disability to the types of discrimination prohibited under Section 296(1) in 1974, it did not amend Section 296(9)(a)." (Id.) Further, "despite making several subsequent amendments to Section 296(9), the legislature never added disability to the types of discrimination prohibited under Section 296(9)(a)." (Id.)

4

In response, Plaintiff argues that for purposes of the NYSHRL, he should be considered an employee of the IPFD, not a "volunteer member of a fire department or fire company." As an employee, Plaintiff would be protected from discrimination on the basis of disability under the NYSHRL because the statute contains a general prohibition that bars an "employer" from discriminating on the basis of "an individual's age, race, creed, color, national origin, sexual orientation, gender identity or expression, military status, sex, <u>disability</u>, predisposing genetic characteristics, familial status, marital status, or status as a victim of domestic violence." N.Y. Exec. Law § 296(1)(a) (McKinney) (emphasis added). Defendants' motion therefore turns entirely on whether Plaintiff is permitted to pursue a claim for disability discrimination under § 296(1)(a) if the IFPD is considered his "employer" or whether Plaintiff must proceed under § 296(9)(a), which covers "volunteer" firefighters but does not prohibit discrimination based on disability.

In resolving this dispute as to the application of New York law, the Court must predict how the New York Court of Appeals would address the issue. See <u>Travelers Ins. Co. v. 633 Third Assocs.</u>, 14 F.3d 114, 119 (2d Cir. 1994) ("Where the substantive law of the forum state is uncertain or ambiguous, the job of the federal courts is carefully to predict how the highest court of the forum state would resolve the uncertainty or ambiguity.")

Though Plaintiff's complaint concedes that all members of the IPFD are volunteers, it describes the IPFD as "an employer engaged in industry affecting commerce within the meaning of the ADA, 42 U.S.C. §§ 12111 (5) and (7), and an employer within the meaning of the NYSHRL, N.Y. Exec. L.§ 292." (ECF No. 1 at 4.) To support his theory that he was an employee rather than a volunteer of the IPFD, Plaintiff cites a case in which the Appellate Division, Fourth Department considered a volunteer firefighter to have been an "employee" for purposes of bringing a claim under the NYSHRL. In <u>Thygesen v. N. Bailey Volunteer Fire Co.</u>, the court applied federal case

5

law interpreting Title VII to assess whether an employment relationship existed between the plaintiff and the fire company for which he volunteered. 106 A.D.3d 1458, 1461, 964 N.Y.S.2d 816, 819–20 (N.Y. App Div. 2013). The court looked to whether the plaintiff "received direct or indirect remuneration from the alleged employer"—i.e., the test courts apply to assess whether an employment relationship exists under Title VII. Id. In particular, the court considered whether the plaintiff received a financial benefit meeting a minimum level of "significance" or "substantiality" by looking at factors, such as salary or other wages, health insurance, vacation, and sick pay. Id. Ultimately, the court held that the trial court should not have dismissed the plaintiff's NYSHRL claims because there was a triable issue of fact as to whether the plaintiff's $440 monthly payment from a Service Award Program, death benefits to a spouse or dependent children, and eyeglass and hearing aid coverage were significant enough remunerations from the fire department to create an employment relationship. Id. Critically, at no point in its analysis did the court address the provision of the NYSHRL governing volunteer firefighters, Section 296(9)(a). The Fourth Department therefore provided no guidance for when a court should apply Section 296(1)(a) instead of Section 296(9)(a)—the core of the parties' dispute here. And, in contrast, at least one state trial court has held that "no right of action exists against [fire departments or companies] for discrimination based upon Executive Law § 296(9) as disability is not included in the categories protected by Executive Law § 296(9)." Hannigan, 2017 WL 2451915, at *4.

    Ultimately, this Court resolves the dispute in favor of Defendants. The NYSHRL delineates in clear terms two sets of unlawful discriminatory practices: one that applies to employers in general and another that specifically addresses volunteer fire departments. These provisions conflict with respect to protection of discrimination based on disability. Defendants argue that when "there is a conflict between a general provision and a specific provision," the

6

generalia specialibus non derogant canon of statutory interpretation should be applied so that "the specific provision prevails." (ECF No. 18-8 at 7.) The Court agrees. When this canon applies, "a 'narrow, precise, and specific' statutory provision is not overridden by another provision 'covering a more generalized spectrum' of issues." Perez-Guzman v. Lynch, 835 F.3d 1066, 1075 (9th Cir. 2016) (quoting Radzanower v. Touche Ross & Co., 426 U.S. 148, 153–54 (1976)). In a situation where "two statutes come into conflict, courts assume [the legislature] intended specific provisions to prevail over more general ones . . . the assumption being that the more specific of two conflicting provisions 'comes close to addressing the very problem posed by the case at hand and is thus more deserving of credence.'" Id. (quoting Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts 183 (2012)). See also Mattel, Inc. v. Barbie-Club.com, 310 F.3d 293, 300–01 (2d Cir. 2002) (applying this canon to conclude that it "would be odd for Congress to have taken pains to enact subsection (d)(2)(A) with its specific procedure for filing an in rem action 'in the judicial district in which the domain registrar . . . is located,' only to qualify, and indeed nullify, that circumscribed requirement by effectively creating nationwide in rem jurisdiction in subsection (d)(2)(C)."); Dutchess County Dept. of Social Services ex rel. Day v. Day, 96 N.Y.2d 149, 154 (2001) ("Statutes which relate to the same subject matter must be construed together unless a contrary legislative intent is expressed. Courts must harmonize the various provisions of the related statutes and construe them in a way that renders them internally compatible.")).

In applying this canon of interpretation, the Court assumes that the legislature intended for the more specific provision of the NYSHRL concerning volunteer fire departments to prevail over the general provision concerning employers. Accordingly, the Court applies Section 296(9)(a) to conclude that—as a volunteer firefighter—Plaintiff is precluded from bringing a claim under the NYSHRL because the statute affords no protection for volunteer firefighters from discrimination

7

on the basis of disability. Plaintiff's NYSHRL discrimination claim against the IPFD is therefore dismissed.[3]

In addition, because Plaintiff concedes that his retaliation claim is "predicated on the success" of his disability discrimination claim, his retaliation claim therefore fails. (ECF No. 18-4 at 11.) Likewise, the dismissal of his discrimination claim bars him from bringing a claim against Whalen for aiding and abetting such discrimination as well. See Jain v. McGraw-Hill Cos., 827 F. Supp. 2d 272, 277 (S.D.N.Y. 2011) ("[T]he NYSHRL and NYCHRL require 'that liability must first be established to the employer/principal before accessorial liability can be found as to an alleged aider and abettor.'")

Based on the foregoing, the Court dismisses all of Plaintiff's claims brought under the NYSHRL.

### IV. CONCLUSION

For the reasons set forth above, Defendants' partial motion to dismiss is **GRANTED** and Plaintiff's claims under the NYSHRL are dismissed.

---

[3] In further support of their argument that the NYSHRL does not protect members of volunteer fire departments or companies from discrimination on the basis of disability, Defendants attach to their motion "Employment Complaint Forms" that were submitted to the New York State Division of Human Rights in three unrelated cases in which Defendants' counsel was involved. Under the heading, "You believe you were discriminated against in the area of," a list of categories includes "Volunteer Firefighter." Next to the firefighting check box is the disclaimer: "excludes disability, age, domestic violence victim status, arrest, conviction, genetic history." (ECF No. 18-2 at 2-4.)

In reply, Defendants argue that Plaintiff did not respond to this point and therefore "conceded" that the "DHR (the agency which enforces the NYSHRL) is not concerned with whether volunteer firefighters receive any pay or other benefits." (ECF No. 18-8 at 12.) However, it is far from clear that it is appropriate for the Court to even consider these materials on a motion to dismiss. In any event, these materials, even if they could be considered, add little to Defendants' argument. The DHR's use of this form is not akin to a formal statement by the DHR interpreting the NYSHRL in a regulation, guidance, or litigation—interpretations that, at least conceivably, might warrant some deference or at least be considered persuasive authority. Even if the forms provided by Defendants were properly before the Court, they would, at best, be some evidence into how DHR interprets the statute. The Court, however, finds that the statutory language itself is sufficient to decide this question and has not relied on DHR's forms in interpreting the statute.

The Court respectfully refers this case to Judge Locke to oversee discovery on Plaintiff's remaining ADA claim against the IPFD.

**SO ORDERED.**

Dated:  March 31, 2021
   Central Islip, New York

                               /s/ (JMA)
                               JOAN M. AZRACK
                               UNITED STATES DISTRICT JUDGE